UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                    :

PEARSON EDUCATION, INC. *et al.*,         :

                      :

             Plaintiffs,      :

                      :            19 Civ. 487 (JPC)

        -v-                 :

                      :            OPINION

GEOFFREY LABOS *et al.*,          :       AND ORDER

                      :

             Defendants.     :

                      :

----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This action is brought by major publishers of educational materials against several Defendants for allegedly infringing their copyrights and trademarks by selling counterfeit textbooks on eBay.com and other online marketplaces. Plaintiffs have resolved their claims against several of these online booksellers. Four Defendants remain, each of whom is in default: Geoffrey Labos, Dien T. Truong, Emuejevoke Oduma, and Miyoshi Massington (collectively, the "Defaulting Defendants"). Plaintiffs Pearson Education, Inc., McGraw-Hill Global Education Holdings, LLC, and Cengage Learning, Inc.[1] now seek a default judgment as to the Defaulting Defendants.[2] On February 4, 2021, the Court held a default judgment hearing, at which it found that each of the Defaulting Defendants had notice of the filing of the case against and of that hearing, yet had failed to appear in this action or otherwise respond to the claims against them.

---

[1] This lawsuit also was brought by a fourth Plaintiff, Bedford, Freeman & Worth Publishing Group, LLC ("Macmillan Learning"). Macmillan Learning has not joined in the instant default judgment motion because it has no claims against any of the Defaulting Defendants. Accordingly, the Court's references to "Plaintiffs" in this Opinion and Order do not include Macmillan Learning.

[2] Plaintiffs previously also sought a default judgment as to Defendant Krystyna Szymanska, but they recently settled their claims as to her. *See* Dkt. 101. On September 22, 2021, the Court entered a final judgment and permanent injunction with respect to Szymanska. Dkt. 102.

For reasons explained below, the Court grants Plaintiffs' motion.  The Court therefore will enter a final default judgment and permanent injunction as to the Defaulting Defendants and award damages to Plaintiffs.  The Court, however, denies Plaintiffs' request for a post-judgment asset freeze.

# I.  Background

## A.  Facts

In default judgment proceedings, "the [C]ourt . . . accept[s] as true all of the factual allegations of the complaint, except those relating to damages."  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  The Court summarizes those facts relevant to Plaintiffs' motion for a default judgment.

Plaintiffs are "leading educational publishers in the United States."  Dkt. 29 ("Am. Compl.") ¶ 2.  Their publications include physical and digital textbooks, which are available for sale and rent from brick-and-mortar and online bookstores.  *Id.* ¶ 27.  Plaintiffs' textbooks are protected by copyrights registered with the United States Copyright Office, and the trademarks and service marks they bear are protected by registrations with the United States Patent and Trademark Office.  *Id.* ¶¶ 31-32; Dkt. 59 ("Fleischman Declaration") ¶¶ 6-7.  Plaintiffs own or are the exclusive licensees of the marks at issue in this case.  Am. Compl. ¶ 32; Fleischman Declaration ¶ 7. Plaintiffs invest significant resources in not just publishing their works, but also advertising their textbooks, promoting customer goodwill, and maintaining their reputation in the market for producing high-quality educational materials.  Am. Compl. ¶ 29; Fleischman Declaration ¶ 8.  Not surprisingly, Plaintiffs also "expend great effort combatting textbook counterfeiting worldwide."  Am. Compl. ¶ 45; *accord* Fleischman Declaration ¶ 9.

Each of the Defaulting Defendants engaged in the unauthorized sale of Plaintiffs' copyrighted textbooks.  Plaintiffs' proof comes from purchases Plaintiffs made from various online storefronts operated by the Defaulting Defendants.  *See* Fleischman Declaration ¶¶ 10-11. Plaintiffs purchased approximately seventeen copyrighted works from Labos, which he sold at "too good to be true" prices that were far below market value.  Am. Compl. ¶¶ 52, 54; *id.*, Exh. B; Fleischman Declaration ¶ 14.[3]  After the Honorable Colleen McMahon enjoined Labos from continuing to violate Plaintiffs' copyrights on January 17, 2019, Dkt. 3, the Honorable Ronnie Abrams found that Labos violated that injunction earlier this year, *Pearson Educ., Inc. v. ABC Books Ltd.*, No. 19 Civ. 7642 (RA), 2021 WL 1577766, at *1-2 (S.D.N.Y. Apr. 21, 2021). Plaintiffs also purchased eleven counterfeit works from Truong.  Am. Compl. ¶ 58; *id.*, Exh. B; Fleischman Declaration ¶ 23.  Truong operated on eBay under a fictitious name and using a fictitious address, and that account was linked to a PayPal account in the same fake name.  Am. Compl. ¶ 59.  Truong's PayPal account, in turn, was linked to a fraudulent bank account in an apparently unwitting person's name.  *See* Fleischman Declaration ¶ 25.  Finally, Plaintiffs purchased seven counterfeit works from Oduma and Massington, who jointly operated an online storefront.  Am. Compl. ¶ 73; *see* Fleischman Declaration ¶ 27.  Oduma and Massington similarly registered the eBay and PayPal accounts associated with their online storefront under fictitious names and addresses.  Am. Compl. ¶ 74; Fleishman Declaration ¶ 28.

## B.  Procedural History

Plaintiffs filed suit on January 17, 2019, bringing claims of copyright infringement in violation of 17 U.S.C. §§ 101, *et seq.*, and trademark infringement in violation of 15 U.S.C. §

---

[3] The Amended Complaint references eighteen counterfeit works sold by Labos, *see* Am. Compl. ¶ 54, but the exhibit attached to the Amended Complaint lists only seventeen works, *see id.*, Exh. B, as does the motion for default judgment, *see* Dkt. 58 at 7.

1114(1)(a), against seven unnamed "Doe" defendants, identified by their online storefront names. Dkt. 1.  On the same day, Judge McMahon issued a Temporary Restraining Order, enjoining those defendants from infringing any copyrighted work or trademark owned or exclusively controlled by Plaintiffs.  Dkt. 3.  Judge McMahon then entered Preliminary Injunctions on February 14, 2019 and April 23, 2019.  Dkts. 22, 23, 35.

On March 22, 2019, Plaintiffs filed the Amended Complaint, naming previously anonymous defendants who had been identified during expedited limited discovery.  Dkt. 29. Plaintiffs have since voluntarily dismissed their actions against and/or settled with all Defendants aside from the Defaulting Defendants, Dkts. 46, 48, 64, 101.[4]

On September 29, 2020, the case was reassigned to the undersigned.  As relevant to the Defaulting Defendants, Plaintiffs continue to allege fourteen instances of copyright infringement and three instances of trademark infringement committed by Labos, eight instances of copyright infringement and three instances of trademark infringement committed by Truong, and five instances of copyright infringement and two instances of trademark infringement committed by each Oduma and Massington.  *See* Am. Compl. ¶¶ 81-95; Dkt. 91, Exh. A.

On November 19, 2020, the Clerk of Court entered a Certificate of Default as to the Defaulting Defendants.  Dkt. 54.[5]  On December 11, 2020, Plaintiffs moved for a default judgment

---

[4] At the February 4, 2021 default judgment hearing, Plaintiffs' counsel explained that, after receiving expedited discovery that allowed them to learn about Defendants' inventory and sales, they "were able to make a settlement offer and ultimately come to a settlement agreement with those other defendants."  Dkt. 80 at 6-7.

[5] On this date, the Clerk of the Court also issued a Certificate of Default as to Defendant Amelia Aguila and Szymanska.  Dkt. 54.  On February 2, 2021, Plaintiffs advised the Court that Aguila had filed for bankruptcy, resulting in an automatic stay as to her under the Bankruptcy Code.  Dkt. 71; *see* 11 U.S.C. § 362.  Because of the stay, Aguila's default was not addressed at the Court's February 4, 2021 default judgment hearing.  On May 27, 2021, Plaintiffs advised the Court that Aguila's debts have been discharged in the bankruptcy, and that the Court may dismiss

and equitable relief, Dkt. 57, and the Court held a default judgment hearing on February 4, 2021, Dkt. 80. The Defaulting Defendants have not opposed entry of a default judgment and did not appear at the default judgment hearing. *See id.*

## II. Discussion

### A. Default

"Entry of a default judgment is appropriate when the 'adversary process has been halted because of an essentially unresponsive party.'" *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 118 (S.D.N.Y. 2008) (citation omitted). At the default judgment hearing on February 4, 2021, the Court reviewed with Plaintiffs' counsel the service of the summons and the Amended Complaint on the Defaulting Defendants, those Defendants' failure to answer or move as to the Amended Complaint, and the filing of a Certificate of Default by the Clerk of the Court. Dkt. 80 at 28:2-31:2. The Court further inquired about any communications that Plaintiffs' counsel had with the Defaulting Defendants, including any indications that they planned to challenge the lawsuit. *Id.* at 8:4-12:20. The Court also confirmed the service on the Defaulting Defendants of the default judgment motion and related papers, including notice of the hearing. *Id.* at 31:3-33:25. After confirming that none of the Defaulting Defendants were at the hearing, the Court found that the Defaulting Defendants all had notice of the filing of this action against them, as well as notice of the default judgment hearing. *Id.* at 33:11-34:2. The Court explained that it would accept as true the well-pleaded allegations of the Amended Complaint, and expressed its intent to enter a default judgment as to the Defaulting Defendants on all causes of action pleaded in the Amended Complaint. *Id.* at 34:2-12. After a discussion with Plaintiffs' counsel on damages, including

---

her from this lawsuit. Dkt. 87. Accordingly, on July 15, 2021, the Court terminated Aguila as a Defendant. Dkt. 90. And as noted, Plaintiffs recently resolved their claims against Szymanska.

Plaintiffs' request for a post-judgment asset freeze, *id.* at 34:3-45:2, the Court reserved ruling on damages pending receipt of further briefing, *id.* at 45:3-20.

Since the February 4, 2021 hearing, the Defaulting Defendants still have not appeared in this case.  The Court thus finds that the Defaulting Defendants have defaulted.

## B.  Liability

As previewed at the default judgment hearing on February 4, 2021, the Court enters a default judgment on liability as to the Defaulting Defendants on all causes of action in the Amended Complaint.  The Court here briefly expands on its finding of liability.

Because the Court assumes the Amended Complaint's allegations, except with respect to damages, are true, "the sole issue before the Court is whether Plaintiff[s] ha[ve] provided adequate support for the relief [they] seek[]."  *Gucci Am., Inc.*, 678 F. Supp. 2d at 119 (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  The Amended Complaint pleads two claims: willful copyright infringement in violation of 17 U.S.C. § 101, *et seq.*, and willful trademark counterfeiting in violation of 15 U.S.C. § 1114(1)(a).  Am. Compl. ¶¶ 81-95.

To establish federal copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Here, Plaintiffs have pleaded in the Amended Complaint, and further demonstrated through declarations from senior employees at each of their companies, that they are the owners or exclusive licensees of all rights, title, and interest in the works that the Defaulting Defendants allegedly infringed, including the copyrights in those works.  *See* Am. Compl. ¶¶ 31, 83; Dkt. 8 ("Cengage Declaration") ¶ 5; Dkt. 9 ("McGraw-Hill Declaration") ¶ 5; Dkt. 11 ("Pearson Declaration") ¶ 5.  Plaintiffs also have pleaded that at no

time were these rights assigned, licensed, or otherwise transferred to the Defaulting Defendants. Am. Compl. ¶ 83.  Plaintiffs similarly have established that they, or their affiliates, have duly registered the copyrights in these works, *id.* ¶ 31; Cengage Declaration ¶ 5; McGraw-Hill Declaration ¶ 5; Pearson Declaration ¶ 5, which is *prima facie* evidence of the validity of the copyrights, *see* 17 U.S.C. § 410(c).

Plaintiffs also have established that all of the Defaulting Defendants, acting with knowledge of Plaintiffs' rights, infringed Plaintiffs' copyrights by selling and distributing knockoff copies of the Plaintiffs' validly copyrighted books.  *See* Am. Compl. ¶ 84.  In addition, for reasons discussed below, the Court finds that the Defaulting Defendants' infringing acts were willful for purposes of 17 U.S.C. § 504(c)(2).  Thus, the Court finds in favor of Plaintiffs on the Defaulting Defendants' liability for willful copyright infringement.

The elements of federal trademark infringement under the Lanham Act are (1) the plaintiff "owns a valid, protectable trademark," (2) "the defendants used the registrant's trademark in commerce and without consent," and (3) "there was a likelihood of consumer confusion." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp 3d 137, 153 (E.D.N.Y. 2016).  The Amended Complaint alleges that Plaintiffs are the owners or exclusive licensees of the marks that the Defaulting Defendants allegedly used.  Am. Compl. ¶¶ 32, 89-90.  These allegations were confirmed by the Plaintiffs' declarations.  *See* Cengage Declaration ¶ 6; McGraw-Hill Declaration ¶ 6; Pearson Declaration ¶ 6.  Plaintiffs also have established that the Defaulting Defendants, without Plaintiffs' consent, used counterfeit reproductions of these marks to market and sell knock-off copies of Plaintiffs' textbooks.  *See* Am. Compl. ¶ 90; Cengage Declaration ¶ 7; McGraw-Hill Declaration ¶ 7; Pearson Declaration ¶ 7.  Plaintiffs further have established that this unauthorized use is likely to cause among consumers confusion, mistake, or deception.  *See* Am.

Compl. ¶¶ 51, 90, 93; Cengage Declaration ¶ 11; McGraw-Hill Declaration ¶ 11; Pearson Declaration ¶ 11; *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (explaining that "counterfeits, by their very nature, cause confusion"). And again, as discussed below, the Court finds that the Defaulting Defendants' infringement of Plaintiffs' marks was willful. Plaintiffs' pleadings thus sufficiently establish the Defaulting Defendants' liability for willful trademark infringement.

## C.  Damages

Plaintiffs have elected to pursue statutory damages in this case. *See* Dkt. 58 at 21. They seek damages against Labos and Truong separately and a joint damages award against Oduma and Massington, because those two Defendants jointly operated their online storefront. *See id*.

"The Copyright Act provides for statutory damages between $750 and $30,000 per copyright infringed, and in the case of willful copyright infringement, damages up to $150,000 per copyright infringed. Similarly, the Lanham Act provides for statutory damages between $1,000 and $200,000 per counterfeit mark, and in the case of willful trademark infringement, damages up to $2,000,000." *Pearson Educ., Inc.*, 2021 WL 1577766, at *2 (citation omitted) (citing 17 U.S.C. § 504(c)(1)-(2); and then citing 15 U.S.C. § 1117(c)(1)-(2)). When assessing statutory damages for both types of infringement, the Court has wide discretion and considers "(1) 'the expenses saved and the profits reaped'; (2) 'the revenues lost by the plaintiff'; (3) 'the value of the copyright'; (4) 'the deterrent effect on others besides the defendant'; (5) 'whether the defendant's conduct was innocent or willful'; (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced'; and (7) 'the potential for discouraging the defendant.'" *Union of Orthodox Jewish Congregations of Am. v. Royal Food*

*Distribs. Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) (quoting *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

The Court starts with the question of willfulness, and finds that the copyright and trademark infringement committed by each of the Defaulting Defendants was willful. First, those Defendants' defaults—after having notice of this lawsuit and ample opportunity to appear—imply as much. *See Elsevier Inc. v. Siew Yee Chew*, No. 17 Civ. 6225 (JGK) (GWG), 2019 WL 74606, at *9 (S.D.N.Y. Jan. 2, 2019) (collecting cases). The Defaulting Defendants were confronted with the claims against them for infringement, and have opted to simply ignore them. Second, the specific conduct of each of the Defaulting Defendants reflects additional indicia of willfulness. Labos continued to infringe despite the preliminary injunction entered against him by Judge McMahon. *See Pearson Educ., Inc.*, 2021 WL 1577766, at *2. And Truong, Oduma, and Massington operated their online storefronts using fictitious names and addresses to conceal their identities. Am. Compl. ¶ 74; Fleishman Declaration ¶ 28; *see Elsevier Inc.*, 2019 WL 74606, at *9 (explaining that "willfulness is expressed by . . . attempt[s] to change or conceal . . . identit[y] to avoid detection"). These findings of willfulness trigger the higher statutory maximum damages for copyright infringement and trademark infringement for each of the Defaulting Defendants, and further weigh in favor of a high statutory damages awards against those Defendants.

Several other factors similarly mitigate in favor of high damages awards. As leading publishers of educational materials, the value of Plaintiffs' copyrights and trademarks is considerable. *See* Cengage Declaration ¶ 3; McGraw-Hill Declaration ¶ 3; Pearson Declaration ¶ 3. Plaintiffs all invest heavily in advertising and promoting their textbooks, as well as in maintaining consumer goodwill and their reputation for producing high-quality materials. *See* Cengage Declaration ¶¶ 4, 13; McGraw-Hill Declaration ¶¶ 4, 13; Pearson Declaration ¶¶ 4, 13.

Moreover, the Defaulting Defendants' failure to "cooperate[] in providing particular records from which to assess the value of the infringing material produced," *Union of Orthodox Jewish Congregations of Am.*, 665 F. Supp. 2d at 436 (quoting *Fitzgerald Pub. Co.*, 807 F.2d at 1117), counsels in favor of high damages.  Further, their decision to ignore this litigation has prevented the Court from being able to make precise findings as to the scope of infringing activities, the volume of their profits, and the amount of Plaintiffs' lost revenues.  The Court will not allow the Defaulting Defendants to benefit from its inability to calculate profits and lost revenues on account of their refusal to participate in this litigation. *See Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, No. 06 Civ. 7827 (HB) (GWG), 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) ("[T]he defendant's failure to respond to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendant's circumstances. Thus, the Court draws every reasonable inference on these points against the defendant.").

But while the Court cannot calculate Plaintiffs' lost revenues with precision, it should come as no surprise that legitimate sales and rental of their copyrighted textbooks constitute a substantial portion of Plaintiffs' annual revenues.  *See* Cengage Declaration ¶ 4; McGraw-Hill Declaration ¶ 4; Pearson Declaration ¶ 4.  Counterfeit sales of Plaintiffs' textbooks displace legitimate sales, depriving Plaintiffs of potential revenue.  *See* Cengage Declaration ¶ 10; McGraw-Hill Declaration ¶ 10; Pearson Declaration ¶ 10.  Similarly, the below-market sale of counterfeit books can undermine the perceived value of Plaintiffs' authentic books, thereby risking a loss in future revenue.  *See* Cengage Declaration ¶ 10; McGraw-Hill Declaration ¶ 10; Pearson Declaration ¶ 10.

For related reasons, the need for general and specific deterrence of this illegal conduct also calls for sizable damages awards.  The sale of counterfeit textbooks undercuts the perceived value

of authentic textbooks and harms the victim's brand, business reputation, and goodwill for the quality of its products, potentially hindering future legitimate sales. *See* Cengage Declaration ¶ 12; McGraw-Hill Declaration ¶ 12; Pearson Declaration ¶ 12. And as Plaintiffs argue: "It is impossible for Plaintiffs to bring suit against all or even a substantial portion of counterfeiters, especially given the prolific textbook piracy problem among unscrupulous sellers like [the Defaulting] Defendants on online marketplaces. Thus, significant damage awards against those defendants that Plaintiffs pursue in litigation are essential to deterring others engaged in the same unlawful conduct." Dkt. 58 at 29.

For these reasons, the Court awards Plaintiffs $8,100,000 in damages from Labos, which entails $2,000,000 for each of three infringed trademarks and $150,000 for each of fourteen other infringed copyrights. The Court awards Plaintiffs $390,000 in damages from Truong, which amounts to $50,000 for each of three infringed trademarks plus $30,000 for each of eight other infringed copyrights. And the Court awards Plaintiffs $250,000 in damages from Oduma and Massington, which entails $50,000 for each of two infringed trademarks and $30,000 for each of five other infringed copyrights.

**D. Permanent Injunction**

Plaintiffs request that the Court issue a permanent injunction as to the Defaulting Defendants, permanently enjoining them, their agents, and those in active concern or participation with them from further infringing Plaintiffs' copyrights and trademarks. Both the Copyright Act, 17 U.S.C. § 502(a), and the Lanham Act, 15 U.S.C. § 1116, allow the Court to enter a permanent injunction. A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs have demonstrated their entitlement to a permanent injunction as to the Defaulting Defendants.  First, Plaintiffs' have suffered irreparable harm from the likelihood of consumer confusion, *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (citation omitted), and diminished sales of their legitimate textbooks, *see Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 552-53 (S.D.N.Y. 2008).  Second, Plaintiffs have no adequate remedy at law due to the likeliness of continued infringement absent injunctive relief. *See id.* at 553.  Third, the balance of hardship favors Plaintiffs because the Defaulting Defendants have no legally legitimate interest in continuing to infringe.  *See id.*  And fourth, the public interest favors the efficient enforcement of the policies behind the intellectual property laws.  *See id.* at 553-54.

### E.     Post-Judgment Enforcement

Plaintiffs also request a post-judgment restraint on the dissipation of the Defaulting Defendants' assets, including by third parties, citing Federal Rules of Civil Procedure 64 and 65. *See* Dkt. 58 at 33-34.  But as this Court has previously found, Rules 64 and 65 do not apply to this situation.  The former "applies to provisional remedies, not final relief," while the latter does not "apply to execution of a judgment" or "apply to . . . third parties at issue here."  *See Allstar Mktg. Grp. v. AFACAI*, No. 20 Civ. 8406 (JPC), 2021 WL 2555636, at *6 (S.D.N.Y. June 22, 2021) "Rather, the appropriate applicable law here is found at Rule 69, and by extension, sections 5222 and 5225 of the N.Y. C.P.L.R."  *Id.*  Like the proposal rejected in *Allstar Marketing Group*, however, Plaintiffs' proposal "does not allow a third party to defend any interests that the third

party may have in the property or funds at issue," contrary to applicable New York law. *Id.* at *7. Nor does it allow the Court "to make the findings that section 5225 requires," and it provides no basis for the Court's exercise of jurisdiction over third parties, including unidentified third parties. *Id.*; *accord Off-White LLC v. 2019cheapjordan.com*, No. 19 Civ. 8351 (JPC), 2021 WL 2986399, at *3 (S.D.N.Y. July 14, 2021); *Allstar Mktg. Grp. v. 158*, No. 18 Civ. 4101 (GHW), 2019 WL 3936879, at *4 (S.D.N.Y. Aug. 20, 2019). For the same reasons, the Court cannot grant the request to order third parties to turn the Defaulting Defendants' assets over to Plaintiffs. *See* Dkt. 58 at 35.

But as the Court also explained in *Allstar Marketing Group*, "none of this Court's order is meant to preclude [Plaintiffs'] ability to pursue any remedies available under the N.Y. C.P.L.R." *Allstar Mktg. Grp.*, 2021 WL 2555636, at *8. Pursuant to Federal Rule of Civil Procedure 62(a), "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*." Fed. R. Civ. P. 62(a) (emphasis added). The Court dissolves the automatic stay of judgment imposed by Rule 62(a) to allow immediate enforcement of the judgment. *See Allstar Mktg. Grp.*, 2021 WL 2555636, at *8 (collecting cases).

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for default judgment. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 57. Plaintiffs are directed to file an amended Proposed Default Judgment and Permanent Injunction consistent with this Opinion and Order by October 8, 2021.

SO ORDERED.

Dated: September 30, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge